UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
PREFERRED FRAGRANCE, INC., et al.,                          :
                                                            :
                            Plaintiffs,                     :   **MEMORANDUM**
                                                            :   **DECISION & ORDER**
              - against -                                   :
                                                            :   15 Civ. 1293 (BMC)
BUCHANAN INGERSOLL & ROONEY                                 :
PC and John Doe 1 through John Doe 10,                      :
                                                            :
                            Defendants.                     :
                                                            :
----------------------------------------------------------- X

**COGAN,** District Judge.

      Plaintiffs are a perfume company, three of its principals, and three of its investors. Defendant is the law firm that allegedly represented plaintiffs in connection with an asset sale to non-party Uni-World, a private equity firm. Plaintiffs' only claim for relief is for legal malpractice. Plaintiffs allege that because defendant did not "adequately explain" the terms of the Asset Purchase Agreement ("APA") that memorialized the transaction at issue, they were exposed to breach-of-contract liability to Uni-World for failing to update certain representations and warranties (relating to the company's value) prior to closing. The individual plaintiffs also allege that had defendant explained that the APA exposed them to joint and several individual liability, they would not have signed it. Defendant moves to dismiss on the ground, *inter alia*, that plaintiffs' allegations do not state a claim for malpractice under New York law. I agree, and therefore defendant's motion is granted.

# BACKGROUND

The following facts are alleged in the Complaint and are deemed true for the purpose of deciding the instant motion. Plaintiff Preferred Fragrance, Inc. ("Preferred Fragrance") is a perfume business that creates and sells "impressions" of designer fragrances. Plaintiffs Ezriel, Harry, and Sarah Polatsek (the "Polatsek plaintiffs") are its principals, and the remaining individual plaintiffs (the "Investor plaintiffs") are among its shareholders.

In 2010, non-party Uni-World, a private equity firm, began due diligence on Preferred Fragrance in contemplation of a significant investment. Uni-World hired PricewaterhouseCoopers ("PWC"), whose consultant Avery Tuchman worked on-site at Preferred Fragrance from October 2010 until October 2011, with "open access" to Preferred Fragrance's books and records. Plaintiffs allege that in January 2011, they retained defendant in connection with an anticipated asset sale to Uni-World. Defendant negotiated the APA and related documents, which included employment or consultancy agreements for the individual Polatsek plaintiffs.[1]

The APA, which was signed by all of the individual plaintiffs and on behalf of Preferred Fragrances, contained several specific representations and warranties concerning the company's balance sheet and cash flow, pricing, and regulatory compliance. Paragraph 8.2(a) of the APA, the individual liability provision at issue, further provided as follows:

> 8.2 <u>Indemnification by the Company Indemnitors</u>. Subject to the limitations set forth elsewhere in this <u>ARTICLE 8</u>, from and after the Closing, each of the Company and the Stockholders (collectively, the "**Company indemnitors**") shall, jointly and severally, indemnify, defend and hold harmless the Purchaser, the Parent, their respective Representatives and Affiliates, and the

---

[1] The APA in its entirety is annexed to the Complaint as an exhibit.

> respective heirs, successors and assigns of the foregoing (collectively, the "Purchaser Indemnified Parties"), from and against, and shall promptly reimburse each Purchaser Indemnified Party for, any and all Losses (whether involving a third party or among the parties to this Agreement) asserted against, imposed upon, or suffered or incurred by the Purchaser Indemnified Parties arising from or in connection with … the inaccuracy or breach of any representation or warranty of the Company or the Stockholders contained in this Agreement . . . .

At the end of the APA, the word "STOCKHOLDERS:" appears in bold type at the top of the signature page. It was executed in counterparts by each of the individual plaintiffs who are parties to the APA (*i.e.*, all of the individual plaintiffs with the exception of plaintiff Harry Polatsek).

The APA also contained what is commonly referred to as a "sandbagging" or "pro-sandbagging" clause, which provided in relevant part that:

> The right to indemnification, payment of Losses or other remedy based on representations, warranties, covenants and obligations . . . will not be affected by any investigation conducted with respect to, or any knowledge acquired (or capable of being acquired) at any time . . . with respect to the accuracy or inaccuracy of or compliance with, any such representation, warranty, covenant or obligation.

The APA was executed at a closing in October 2011. In October 2013, Uni-World commenced suit against plaintiffs in the United States District Court for the Southern District of New York, alleging certain specific violations of the representations and warranties in the APA that would have resulted in an over-valuation of the company. In the time since the instant case was filed, Uni-World's action in the Southern District of New York has settled, apparently resulting in a payment of about $3.5mm to Uni-World from at least some of the plaintiffs here.

Plaintiffs allege that certain aspects of the APA were not "adequately explained" to them by defendant. In sum and substance: (1) all plaintiffs allege that if defendant had adequately explained the pro-sandbagging provision, they would have updated their representations and warranties; and (2) the individual plaintiffs allege that if defendant had adequately explained the

3

individual liability provision, they would not have signed the agreement and been exposed to individual liability. Plaintiffs do *not* allege that they did not read, or did not have an opportunity to read, or were told by defendant that they did not need to read, the APA.

**DISCUSSION**

**I**.

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must assume the truth of "all well pleaded, nonconclusory factual allegations" in the complaint. Harrington v. Cnty. of Suffolk, 607 F.3d 31, 33 (2d Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009)). The Court must also draw "all reasonable inferences in the plaintiff's favor." Famous Horse Inc. v. 5th Ave. Photo Inc., 624 F.3d 106, 108 (2d Cir. 2010). The factual allegations in the complaint must nevertheless "be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007).

Plaintiffs' sole claim for relief, for legal malpractice, is governed by New York law. See Diamond v. Sokol, 468 F. Supp. 2d 626, 632 (S.D.N.Y. 2006) (citing Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 n.2 (2d Cir. 2006)). Plaintiffs must allege three essential elements: (1) that defendant was negligent; (2) that defendant's negligence was the proximate cause of the claimed injury; and (3) that plaintiff suffered "actual and ascertainable" damages. Id. The negligence element is sometimes articulated by New York courts as requiring a duty and a breach. See id. n.6; Hatfield v. Herz, 109 F. Supp. 2d 174, 178 (S.D.N.Y. 2000). A malpractice claim must allege that "the attorney failed to exercise that degree of care, skill, and diligence commonly possessed and exercised by a member of the legal community." Hatfield, 109 F. Supp. 2d at 180.

The proximate cause requirement calls for an allegation that "but for" the attorney's alleged failure, the complained-of injury would not have occurred. Diamond, 468 F. Supp. 2d at 633. In addition, "[m]ere speculation of a loss resulting from an attorney's alleged omissions is insufficient to sustain a prima facie case sounding in legal malpractice." Id. at 633-34.

## II.

The principal provision of the APA that plaintiffs allege was not adequately explained to them – and the only one upon which plaintiff Preferred Fragrance relies – is the pro-sandbagging clause, which in essence purported to give Uni-World the right to sue for breach of an express warranty even if it had knowledge of the falsity of the representation prior to closing. However, plaintiffs' allegation that this provision was not adequately explained fails to state a claim for malpractice, because the inclusion of that provision in the APA could not have been a but-for cause of plaintiffs' exposure to Uni-World. That is because, against the factual background of the transaction alleged in this case, the provision was legal surplusage.

Under New York law, "the general rule is that a buyer may enforce an express warranty even if it had reason to know that the warranted facts were untrue." Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 186 (2d Cir. 2007); see also CBS, Inc. v. Ziff–Davis Publishing Co., 75 N.Y.2d 496, 554 N.Y.S.2d 449 (1990) ("The critical question is not whether the buyer believed in the truth of the warranted information . . . but whether it believed it was purchasing the seller's promise as to its truth" (internal quotation marks omitted)).

This general rule, as plaintiffs understandably emphasize, is subject to an exception, the basic contours of which are well-established. The exception provides that "where a buyer closes on a contract in full knowledge and acceptance of facts *disclosed by the seller* which would constitute a breach of warranty under the terms of the contract, the buyer should be foreclosed

5

from later asserting the breach." Galli v. Metz, 973 F.2d 145, 151 (2d Cir. 1992) (emphasis added). This exception, however – as the Second Circuit's statement in Galli makes plain – is "explicitly limited . . . to situations in which the selling party to a sales contract itself informs the buyer of the falsity of the warranties . . . ." Bank of Am. Corp. v. Lemgruber, 385 F. Supp. 2d 200, 229 (S.D.N.Y. 2005) (citing id.). In contrast, "if the seller is not the source of the buyer's knowledge, *e.g.*, if it is merely 'common knowledge' that the facts warranted are false, or the buyer has been informed of the falsity of the facts by some third party, the buyer may prevail in his claim for breach of warranty." Rogath v. Siebenmann, 129 F.3d 261, 265 (2d Cir. 1997)).

Plaintiff Preferred Fragrance and the Polatsek plaintiffs, in their opposition, acknowledge the contours of this rule, but nevertheless argue that they were harmed by defendant's alleged failure to explain the provision. Their theory of the case is that it was they who disclosed the falseness of their own representations and warranties – or more precisely, that their factual allegations support that legal conclusion. That theory, as they explain it, seems to rely entirely on the allegation that Uni-World "had extensive access to Preferred's books and records and Tuchman actually worked on-site at Preferred, giving Uni-World equal or better knowledge than plaintiffs as to Preferred's business and finances." This theory that "access equals communication" is not viable.

First and foremost, any suggestion in this allegation that Uni-World *actually* knew of the falsehood of plaintiffs' representations prior to closing are wholly speculative, and cannot support a malpractice claim. See Diamond, 468 F. Supp. 2d at 633-34. Indeed, to whatever extent plaintiffs are asking me to infer from their allegations that they were intentionally sandbagged by Uni-World – *i.e.*, that Uni-World had actual knowledge of facts that belied plaintiffs' express warranties, but chose to close anyway with the intent to recover the loss

6

through a lawsuit for breach – such allegations are borderline implausible, as a matter of common sense, in light of the undisputed fact that Uni-World did not bring suit until two years later.

Plaintiffs' more plausible version is that Uni-World had no actual knowledge, but had access to information that would have belied plaintiffs' representations and warranties and did not connect the dots until later. A theory of recovery on these facts boils down to the proposition that when a seller provides access to records or company operations for the purpose of due diligence, and the falsehood of a representation or warranty might reasonably have been discerned through that due diligence, that has the same legal effect as affirmatively disclosing the falsehood for purposes of triggering the Galli exception. Nothing in the Galli exception or the cases applying it suggests that it applies so broadly.

Rather, "[t]he law is clear that in order to conclude that [buyers] have waived their right to assert a claim for breach of warranty, we must find that, prior to closing, [sellers] themselves *actively disclosed* . . . facts which would have constituted a breach of the warranties." Promuto v. Waste Mgmt., Inc., 44 F. Supp. 2d 628, 648 (S.D.N.Y. 1999) (emphasis added). The courts that have considered the question are consistent on this point.

In perhaps the most instructive case, which in relevant part included a contract claim to recover for breach of express warranties in a stock acquisition, the seller-defendants contended "that [the buyers]' reliance on [the sellers]' certifications of the truth of the warranties at the time of the [transaction] was not justified because [the buyers] had 'on-site, day-to-day access to all of the books, records and information concerning [the target company]." Bank of Am. Corp. v. Lemgruber, 385 F. Supp. 2d 200, 229 (S.D.N.Y. 2005) (record citation omitted). The court rejected that contention, observing that the sellers were

7

> essentially arguing that the truth . . . was 'common knowledge', and neither [the sellers] nor the record . . . in any way suggests that [the sellers] themselves revealed to [the buyers] before completion of the [transaction] that the warranties were no longer true. Thus, the Galli exception to the Ziff–Davis rule does not apply here . . . .

Id.

Similarly, in Paraco Gas Corp. v. AGA Gas, Inc., 253 F. Supp. 2d 563 (S.D.N.Y. 2003), a purchaser of real property sought indemnification from the seller in part as a result of contamination levels that constituted a breach of the buyer's express warranty. In relevant part, the court held that because the environmental assessor who had discovered the contamination "was hired by [the buyer], the Sellers cannot argue that they disclosed the contamination to [the buyer], and they cannot argue that [the buyer] waived any breach of warranty." Id. at 577.

Such consistent protection of a buyer who has access to information through due diligence but overlooks it reflects the origins of the New York rule – indeed, it is precisely what a buyer is looking for when it bargains for an express warranty. As Judge Learned Hand explained, an express warranty is properly understood as "an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended precisely to relieve the promisee of any duty to ascertain the fact for himself." Metropolitan Coal Co. v. Howard, 155 F.2d 780, 784 (2d Cir. 1946).

These principles are easy to apply to the facts at bar. The only potentially relevant factual allegation is that a third-party consultant, PWC, had access to due diligence materials which would have revealed the falsity of plaintiffs' express warranties. But PWC was hired by Uni-World, and not by plaintiffs. Moreover, the Complaint itself in other respects belies any possible inference that plaintiffs themselves "actively disclosed" the inaccuracy of their representations and warranties. Specifically, the Preferred Plaintiffs allege that but for defendant's failure to advise them "that they were making specific representations that required

8

updating upon a change of conditions," they "would have updated the various schedules to the APA that required updating" and would not have been sued.

In sum, to the extent that the Complaint premises defendant's alleged malpractice on a failure to explain a provision that had no legal effect, it fails to plead causation and therefore fails to state a claim. Because plaintiff Preferred Fragrance's claim against defendant rests entirely on this allegation, its claim must be dismissed.

## III.

The conclusion that defendant's alleged failure to explain the pro-sandbagging provision does not give rise to a malpractice claim does not end the case with respect to the individual plaintiffs. This is because they also allege that they were harmed by defendant's failure to adequately explain a provision of the APA that imposed joint and several liability on them individually for, among other things, the breaches of warranty that were at issue in the Southern District litigation.

The individual plaintiffs' allegation essentially is that they did not understand that by signing the APA, they were exposed to individual liability for breaches on the part of the company (as to the Polatsek plaintiffs) or of other individual signatories (as to the Investor plaintiffs), all as a result of defendant's failure to "adequately explain" the meaning of paragraph 8.2(a) of the APA.

Defendant does not argue that the provision was explained to plaintiffs and that they somehow, by their own fault, misunderstood; rather, defendant's position is that the provision spoke for itself. The issue on this motion is therefore whether defendant had a cognizable duty to do more. Although the applicable New York cases do not squarely provide an answer to this question, I conclude that the correct interpretation of the relevant precedent is that no such duty exists.

New York courts, as well as at least one District Court in this Circuit applying New York law, have recognized the proposition that when the only allegation of legal malpractice is a failure to advise a plaintiff-client of the consequences of a contractual provision, without more, there is no malpractice liability where "the agreement reveal[s] on its face what the client claim[s] he was not told" because in such cases, the malpractice claim is "'flatly contradicted by documentary evidence.'" Diamond, 468 F. Supp. 2d at 635 (discussing and quoting Beattie v. Brown & Wood, 243 A.D.2d 395, 663 N.Y.S.2d 199 (1st Dep't 1997)).

There are certainly few and arguably no cases applying this rule to facts that fit squarely within it, perhaps because few such cases have been brought, and there is no question that the rule rejecting a "failure to explain" theory of malpractice liability has been circumscribed by subsequent cases. But I have not been cited to – and am unaware of – any case at all that would contradict it on the instant facts and support the broad theory of malpractice liability that plaintiffs ask me to endorse instead. Moreover, the cases rejecting it can be distinguished from this one, as they involve allegations or proof of substantively unreasonable advice or complete deference to an attorney under circumstances that were justified by the attorney's own conduct.

For example, the New York Court of Appeals, affirming a decision by the First Department that relied in part on Beattie, has held that the binding nature of a legal document "does not absolutely preclude an action for professional malpractice against an attorney for negligently giving to a client an *incorrect explanation*" of its contents. Bishop v. Maurer, 9 N.Y.3d 910, 844 N.Y.S.2d 165 (2007) (emphasis added). That case is, if anything, support for application of the Beattie rule here – the Court in Bishop held that relief was not available

10

because, as here, "plaintiffs' complaint [wa]s devoid of any nonconclusory allegation that incorrect advice was given." Id. at 911. For it is one thing for a client to rely on his lawyer's incorrect advice that a contractual provision does not mean what it says; it is quite another to hold that a lawyer will be liable in malpractice for not explaining to a client what a plainly worded contractual provision does, in fact, say.

Similarly, of course, where the negligence of an attorney is evinced by a substantive aspect of the document at issue, a malpractice claim lies. See, e.g., Fielding v. Kupferman, 65 A.D.3d 437, 885 N.Y.S.2d 24 (1st Dep't 2009) (distinguishing Bishop where the evidence showed that certain of the plaintiff's funds, including the amount necessary to satisfy his contractual obligation, were not immediately available, as they were characterized by the stipulation at issue). Cf. also Stokes v. Lusker, No. 08-cv-3667, 2009 WL 612336 (S.D.N.Y. Mar. 4, 2009), aff'd, 425 F. App'x 18 (2d Cir. 2011) (malpractice claim stated where the plaintiff alleged that he had "hired [the defendant] to review the offering documents and tell him what they meant" and that the defendant *attorney* had not read the documents to ensure that they reflected plaintiff's requirements for the agreement, of which the attorney was aware).

In the same vein, in Diamond, the plaintiff's attorney omitted certain claims for economic damages from her dental malpractice case. Arguably, as here, the gravamen of her grievance with her attorney was that although the plaintiff signed the bill of particulars, she "learned only too late the prejudicial consequences" of the omission. 468 F. Supp. 2d at 635. That similarity to this case is superficial, however, because the court based its denial of the defendant's motion for summary judgment primarily on its determination that the "legal risk appear[ed] nowhere on the face of the documents" and, more importantly, that the attorney "unreasonably advised her about which damages to assert."

11

There are two important distinctions here. First, and once again as a matter of common sense, the legal risk of the individual liability provision could not have been more plainly stated on the face of paragraph 8.2 of the APA. Second, although plaintiffs allege that they misunderstood the individual liability provision of the APA, nowhere do they allege that it would have been unreasonable for defendant to recommend it if they had.

The court in Diamond also recognized that a malpractice claim might lie in New York despite the rule set forth in Beattie if the client "claims not to have read the contractual agreement she signed." Id. (distinguishing Arnav Indus., Inc. Retirement Trust v. Brown, Raysman, Millstein, Felder & Steiner, LLP, 96 N.Y.2d 300, 727 N.Y.S.2d 688 (2001), overruled on other grounds by Oakes v. Patel, 20 N.Y.3d 633, 965 N.Y.S.2d 752 (2013)). However, I do not read Diamond as suggesting that all that is missing from this Complaint is an allegation that plaintiffs did not read the APA. This is because the Diamond court's characterization of the claim in Arnav as simply involving an agreement that the plaintiffs "had signed without reading," id., only tells a small part of the story.

In Arnav, the defendant law firm provided a revision of a settlement agreement to its client, "advising plaintiffs that the revision corrected a typographical error in the first paragraph." Arnav, 96 N.Y.2d at 302. The revision in fact contained a new error in a different paragraph, which inured to the detriment of the plaintiffs in the amount of approximately $4 million. The court held, unsurprisingly, that the plaintiffs had "sufficiently allege[d] that defendant failed to exercise the reasonable skill and diligence commonly possessed by members of the legal profession." Id. at 304.

This brings us to the only case – of which I am aware – that arguably supports liability on facts similar to these. Mandel, Resnik & Kaiser, P.C. v. E.I. Electronics, Inc., 41 A.D.3d 386,

839 N.Y.S.2d 68 (1st Dep't 2007), also involved a corporate acquisition. The deal agreement was amended between its initial and final drafts to make the plaintiff buyer's put option (*i.e.*, its right to consummate the acquisition) contingent on the seller's exercise of its own option. The testimony before the court on summary judgment included a concession by the plaintiff's principal that he had read the agreement carefully. The court found, however, that the agreement itself did not "conclusively establish a defense to the factual allegations of malpractice since it is not clear whether [plaintiff's principal] understood" the relevant language. Id. at 388.

But the court also found that "there is a question regarding the extent of the reliance upon counsel to produce an agreement accurately reflecting defendant's perception of the transaction." Id. (citation omitted). That finding, coupled with the evidence at summary judgment that the plaintiff law firm had failed to preserve an expressly contemplated deal term, seems to me to create an important distinction. There is no allegation in this case that defendant knew, or had reason to know, that plaintiffs would balk at the individual liability provision, which are common in closely held business transactions. It is understandable that the court in Mandel took into consideration, at summary judgment, the uncertainty in the plaintiff's ability to understand the deal provision at issue in that case. But given the simplicity of the deal term at issue here, the fact that the plaintiffs simply allege that they did not understand it – an allegation that is impossible to refute – should not mean that by failing to proffer an unsolicited layman's explanation of it to their commercial clients, defendant "failed to exercise the reasonable skill and diligence commonly possessed by members of the legal profession."

In any event, given the similarity of the material facts of Mandel and Bishop, any reading of Mandel that would require a different result here would conflict with the New York Court of

13

Appeals' later holding that relief is not available when the complaint is "devoid of any nonconclusory allegation that incorrect advice was given." Bishop, 9 N.Y.3d at 911.

In sum, although I recognize that the fact pattern presented by plaintiff's allegation is somewhat unique, I see no reason that the narrow rule articulated in Beattie and recognized by subsequent courts, including the Southern District of NewYork and (*sub silentio*) by the New York Court of Appeals, is not the correct one here. In so holding, I am influenced in no small part by consideration of the practical consequences of a holding to the contrary. It seems to me that a rule allowing liability on facts like the ones alleged here would be unworkable, primarily for lack of a limiting principle, in the context of a commercial transaction. Even if counsel to a deal participant were to sit at length with his commercial client, and to walk paragraph by paragraph through an agreement of this type, a client who becomes unhappy with a risk allocation that ends up going badly would always have the ability to bring his lawyer into litigation, without any colorable argument that a provision of the agreement was substantively unreasonable, nor any allegation of misinformation or justifiable reliance on the attorney, simply by alleging that he did not understand the risk because it was not "adequately explained."

Distilled to its essence, plaintiffs' claim is as follows: They read a provision of an agreement which created individual exposure to liability for certain breaches by another party, presumably a bargained-for risk. Without inquiring as to its meaning and (they now claim) having misunderstood it, they signed the agreement. The risk came to fruition. They now seek indemnification from the attorney who negotiated the agreement without affirmatively pointing out the nature of the particular risk. To allow the individual plaintiffs to shift their liability to their attorneys on such a theory would strain the notion of malpractice liability to its breaking

14

point. I therefore conclude that the alleged omission relied upon by the individual plaintiffs with respect to the individual liability provision of the APA is not actionable as malpractice.

## IV.

Defendant presents an additional compelling argument that plaintiffs Harry and Ezriel Polatsek have failed to allege that defendant's failure to explain the APA was the "but-for" cause of their individual liability to Uni-World. Harry, as the Complaint itself makes clear, was not a party to the APA, and cannot have been liable to Uni-World for any breach thereof. Ezriel, it can be discerned from Southern District filings of which I take judicial notice, was potentially liable to Uni-World on theories of federal law that did not implicate the APA; it is therefore unlikely that he has alleged but-for causation with respect to the cost of his defense and settlement. (In contrast, although defendant argues that plaintiff Joseph Rubinstein has not been injured because he apparently did not participate in the settlement of Uni-World's claims, his allegation is also that he was injured by his exposure to liability and the need to defend himself from suit.)

## CONCLUSION

Defendant's [12] motion to dismiss is granted. The Clerk is directed to enter judgment dismissing the Complaint.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
October 18, 2015

15